\*\*E-Filed 3/25/2009\*\*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| GLENARD JOHNSON,<br><br>          Plaintiff,<br><br>     v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>          Defendant. | Case Number 07-05223 JF<br><br>ORDER[1] DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

## I.  BACKGROUND

Plaintiff Glenard Johnson ("Johnson") filed this action on May 25, 2007, appealing a decision by Defendant Commissioner of Social Security (the "Commissioner") that denied him disability insurance benefits after August 28, 2004.[2]

The following facts are taken from the ALJ's decision of July 28, 2006 and the

---

[1] This disposition is not designated for publication in the official reports.

[2] The challenged decision was rendered by Administrative Law Judge Brenton L. Rogozen ("the ALJ") on July 28, 2006. The ALJ's decision became final on September 10, 2007, when the Appeals Council of the Social Security Administration denied Johnson's request for administrative review of the decision.

accompanying Administrative Record ("AR"). Johnson was born on May 24, 1964 and was forty years old on August 28, 2004.  AR at 25. He completed high school but had problems learning spelling and comprehension. *Id.* at 792.  He worked for nineteen years as a laborer primarily performing road and paving work. *Id*. at 792.  Johnson claims that he became disabled in April 14, 2003, due to obesity, lumbar spine problems, deep vein thrombosis and pulmonary emboli caused by a two-level lumbar fusion, sleep apnea, coronary artery disease, carpal tunnel syndrome, asthma, and a depressive disorder. *Id.* At 17.  On February 11, 2005, Johnson filed concurrent applications for disability insurance benefits ("Title II claim") and supplemental security income ("Title XVI claim"). *Id.* at 13.  His application was denied initially and upon his motion for reconsideration. *Id.* On August 25, 2005, Johnson filed a request for hearing. *Id.* Johnson, vocational expert Darlene T. McQuary ("McQuary"), and impartial medical expert Sergio R. Bello ("Dr. Bello") testified at the hearing held on May 19, 2006. *Id.*

The ALJ found that Johnson "was under a disability, as defined by the Social Security Act, from April 14, 2003 through August 27, 2004 (20 CFR 404.1520(d) and 416.920(d))." *Id*. at 18.  The ALJ also found that "[medical improvement occurred as of August 28, 2004," and that "[b]eginning on August 28, 2004, [Johnson] has not had impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix I (20 CFR 404.1594(f)(2) and 416.994(b)(5)(I))." *Id*. At 19.  The ALJ determined that "[b]eginning on August 28, 2004, considering [Johnson's] age, education, work experience, and residual functional capacity, [Johnson] has been able to perform a significant number of jobs in the national economy. . . ." *Id*. at 25.

## II.  LEGAL STANDARD

**A. Standard for Reviewing the Commissioner's Decision**

Pursuant to 42 U.S.C. § 405(g), the Court has the authority to review the Commissioner's decision denying Johnson benefits.  The Court must affirm the ALJ's decision if it determines that substantial evidence supports the ALJ's findings and that the ALJ applied the correct legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992). In this context, the term "substantial evidence" means "more than a

mere scintilla but less than a preponderance—[it] is such reasonable evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523; *see also Drouin*, 966 F.2d at 1257.  When determining whether substantial evidence exists to support the ALJ's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Drouin*, 966 F.2d at 1257; *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).  Where evidence exists to support more than one rational interpretation, the Court must defer to the ALJ's decision. *Moncada*, 60 F.3d at 523; *Drouin*, 966 F.2d at 1258.

**B. Standard for Determining Disability**

A person is "disabled" for purposes of receiving social security benefits if he or she is unable to engage in any substantial gainful activity caused by a physical or mental impairment that is expected to result in death or that has lasted or is expected to last for a continuous period of at least twelve months.  *Drouin*, 966 F.2d at 1257; *Gallant v. Heckler*, 753 F.2d 1450, 1452 (9th Cir. 1984).

Social security disability cases are evaluated using a sequential evaluation process.  AR at 14.  If the claimant is found disabled at any point in the process, the ALJ also must determine if his disability continues through the date of the decision.  In making that decision, the ALJ must follow an eight-step evaluation process for the Title II claim and a seven-step process for the Title XVI claim (20 CFR 404.1594 and 416.994).  In the first step for the Title II claim, the ALJ must determine if the claimant is engaging in substantial gainful activity ("SGA")[3]; if so, the claimant no longer is disabled.  For the Title XVI claim, the performance of SGA is not a factor used to determine if the claimant's disability continues.  If the claimant is not engaged in SGA, step two for the Title II claim and step one for the Title XVI claim require the ALJ to determine whether the claimant has an impairment or combination of impairments which meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. At step three for the Title II claim and step two for the Title XVI claim, the ALJ must determine

---

[3] SGA is work that involves significant physical or mental activities performed for pay or profit.  *See* 20 C.F.R. § 404.1520(b); *see also* 20 C.F.R. § 404.1572 (elements of SGA).

whether medical improvement has occurred. If medical improvement has occurred, the analysis proceeds to the fourth step for the Title II claim and the third step for the Title XVI claim. If not, the analysis proceeds to the fifth step for the Title II claim and the fourth step for the Title XVI claim. At step four of the Title II claim and step three the Title XVI claim, the ALJ must determine whether the medical improvement is related to the ability to work. If so, the analysis proceeds to step six of the Title II claim and step five of the Title XVI claim. At step five for the Title II claim and step four for the Title XVI claim, the ALJ must determine if an exception to medical improvement applies. There are two groups of exceptions. If an exception from the first group applies, the analysis proceeds to the next step. If an exception from the second group applies, the claimant's disability ends. If none apply, the claimant's disability continues. Step six for the Title II claim and step five for the Title XVI claim require the ALJ to determine whether all the claimant's current impairments in combination are severe. If all current impairments in combination do not significantly limit the claimant's ability to do basic work activities, the claimant no longer is disabled. If they do, the analysis proceeds to the next step. At step seven for the Title II claim and step six for the Title XVI claim, the ALJ must assess the claimant's residual functional capacity based on the current impairments and determine if he can perform past relevant work. If the claimant has the capacity to perform past relevant work, his disability has ended. If not, the analysis proceeds to the last step. At the last step, the ALJ must determine whether other work exists that the claimant can perform, given his residual functional capacity ("RFC")[4] and considering his age, education, and past work experience. If the claimant can perform other work, he no longer is disabled. *Id.*, at 15- 16

### III.  DISCUSSION

Johnson asks that the Court reverse the Commissioner's final decision and remand this case to the Social Security Administration for immediate payment of benefits. Alternatively, Johnson asks that his case be remanded to the ALJ for additional administrative proceedings to

---

[4]A claimant's RFC is what he or she can still do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155 n. 5 (9th Cir. 1989).

determine whether he is disabled.  The specific issues raised by Johnson are: (1) insufficient basis for rejecting the findings and opinions of Johnson's treating physician, Dr. Lettice; (2) lack of substantial evidence to support a finding of medical improvement; (3) failure to evaluate the occupational assessment and other vocational evidence from Johnson's certified rehabilitation counselor; (4) failure to inquire into the conflict between McQuary's testimony and the Dictionary of Occupational Titles ("DOT"); and (5) failure by the Appeals Council to evaluate additional evidence.

**A. Opinion of Treating Physician**

Johnson alleges that the ALJ did not accord adequate weight to the opinion of his treating physician, Dr. Lettice. Pl.'s Mot. for Summ. J. at 8. "If there is 'substantial evidence' in the record contradicting the opinion of the treating physician, the opinion of the treating physician is no longer entitled to controlling weight.  In that event, the ALJ is instructed by § 404.1527(d)(2) to consider the factors listed in § 404.1527(d)(2)-(6) in determining what weight to accord the opinion of the treating physician." *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007) (internal quotation and citation omitted).  "[W]hen an examining physician provides independent clinical findings that differ from the findings of the treating physician, such findings are substantial evidence." *Id*. (internal quotation and citation omitted).

On a  Physical Residual Functional Capacity Questionnaire dated May 9, 2006, Dr. Lettice listed Johnson's impairments as "discogenic/mechanical disc disruption of L4/5 & L5/S1 with[5]    . . . and foraminal stenosis and post-op DVT [deep vein thrombosis] and PE [pulmonary emboli]." AR at 724.  In May 2004, cardiopulmonary specialist Dr. Breall examined Johnson and reviewed his medical records. AR at 373.  Dr. Breall determined that within a month of their occurrence, the blood clots had disappeared from Johnson's lungs and that "from the standpoint of [Johnson's] heart and lungs and pulmonary embolization, however, he has no disability, whatsoever." AR at 373.  Dr. Breall's opinion is entitled to more weight. See 20 C.F.R. § 404.1527(d)(5) (more weight will be given to a specialist' opinion than to the opinion of a non-

---

[5]The word "with" is followed by a word that is illegible.

1  specialist). On August 28, 2004, Johnson was examined by board-certified orthopedic surgeon
2  Dr. Seymour. Dr. Seymour recommended an ongoing and daily back exercise program to be
3  done by Johnson on his own, assuming appropriate clearance by his cardiologist. AR 516. Dr.
4  Seymour also recommended a vocational rehabilitation program to the extent that such a program
5  would provide retraining in an area that does not require heavy lifting, repeating bending and
6  stooping. AR 517. Finally, at hearing on May 19, 2006, Dr. Bello, after reviewing all the
7  evidence in the record and listening to Johnson's testimony, opined that "by August 27, 2004, the
8  totality of the evidence made it clear that [Johnson] was capable of performing at least a
9  substantial range of light work on a regular and continuing basis." AR at 24. The ALJ is
10 responsible for determining credibility and resolving conflicts in medical testimony.
11 *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989); *Vincent ex rel. Vincent v. Keckler*, 739
12 F.2d 1393, 1395 (9th Cir. 1984). Thus, the record as a whole supports the ALJ's decision to
13 afford Dr. Lettice's opinion little or no weight.

**B. Medical Improvement**

15     Johnson asserts that the ALJ improperly relied on Dr. Seymour's recommendation
16 because Dr. Seymour's report did not involve any current radiology studies or x-rays and Dr.
17 Seymour did not have the August 9, 2004 report of Dr. Lettice. Pl.'s Mot. for Summ. J. at 12.
18 Johnson also asserts that the ALJ improperly relied on the treadmill test performed on October 6,
19 2003 because that test was intended to evaluate Johnson's cardiac status and does not support a
20 finding of cessation of a disability status ten months later on August 27, 2004. However, apart
21 from Dr. Seymour's recommendation and the treadmill test, the ALJ also relied on Dr. Bello's
22 testimony, which was based on the presence of several normal or essentially normal clinical signs
23 and laboratory diagnostic findings.[6] AR at 18. The Court concludes that the ALJ did not rely

---

[6] Dr. Bello testified to the following: 1) Johnson performed for twelve minutes and twelve seconds on his exercise pulmonary function test, a remarkable result (AR 817); 2) Johnson's heart attack was diagnosed by enzymes only and not found on his angiogram; thus his treadmill stress test showed greater functional capacity and showed that his large arteries were not blocked and he did not lose heart function (AR 813-15); 3) Johnson's sleep apnea was resolved by the CPAP and Johnson did not have pulmonary hypertension (AR 818); 4) Johnson's mild carpal

solely on Dr. Seymour's recommendation in determining that Johnson's medical condition had improved. AR at 18-19.

### C. Occupational Assessment

Johnson alleges that the ALJ failed to consider the statements provided by his certified rehabilitation counselor Cheryl Rouse, M.A. ("Rouse").[7] "In interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence.'" *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir.2003). The record indicates that McQuary considered Rouse's report. AR 828. Moreover, on cross-examination of McQuary by Johnson's attorney, McQuary testified extensively based on assumptions derived from Rouse's report. AR 832. Therefore, Rouse's report was integrated into McQuary's testimony and properly considered by the ALJ.

### D. Conflict Between Vocational Expert and the DOT

Johnson alleges that the ALJ failed to inquire into the conflict between McQuary's testimony and the DOT. Pl. Mot. at 14:4-6. "The ALJ must clarify the discrepancy in the opinion *only where there is an apparent unresolved conflict* that arises between the vocational expert's testimony and the DOT." *Mickelson-Wurm v. Commissioner Social Sec. Admin.*, No. 06-35550, 2008 WL 2795881, **3 (9th Cir. 2008) (emphasis original) (citing *Johnson v. Shalala*, 60 F.3d 1428, 1435-36 (9th Cir.1995); *see also* SSR 00-4p, 2000 WL 1898704, at *2. Johnson does not allege any actual conflict between McQuary's testimony and the DOT. He merely alleges that

---

tunnel syndrome did not meet Listing Level and could be accommodated by a preclusion against bilateral repetitive fine and gross motor movements of the hands (AR 819); and 5) a pulmonary function test showed that Johnson's asthma was mild and nonsevere (AR 825).

[7]On December 1, 2005, Rouse reported that Johnson participated in a situational assessment program from October 31, 2005 to November 18, 2005 but was able to attend only a maximum of two to three hours each day. AR 138. Johnson reported pain in his mid and lower back, but did not show any signs of irritability and was able to interact well with the training facility staff. *Id.* Johnson also needed frequent breaks at 20 to 30 minutes intervals, for several minutes at a time, ranging anywhere from 5 to 15 minutes. *Id.* Rouse concluded that "[d]uring the situational assessment, it appeared Mr. Johnson was not even able to maintain a productive sedentary work pace." *Id.*

7

1  the ALJ "cite[d] a particular DOT code which was not testified to by the vocational expert
2  herself." Pl. Mot. at 15:1.  The Social Security Administration has taken administrative notice of
3  the DOT. 20 C.F.R. § 416.966(d)(1); *Massachi v. Astrue*, 486 F.3d 1149, 1152 n. 8 (9th
4  Cir.2007).  Thus, the ALJ properly "[relied upon the DOT] . . . in evaluating whether the
5  [Johnson] is able to perform other work in the national economy." *Terry v. Sullivan*, 903 F.2d
6  1273, 1276 (9th Cir. 1990).

**E. Failure Of The Appeals Counsel To Evaluate Additional Evidence**

On January 26, 2007, Johnson submitted four reports from Dr. Robinson to the Appeals Council.  AR 772.  Johnson alleges that the Appeals Council made no evaluation of the additional reports. Pl. Mot. at 15:14-17.  The four reports from Dr. Robinson concern office visits on July 20, 2006 (AR 782-85), August 14, 2006 (AR 780-81), August 24, 2006 (AR 778-79), and October 24, 2006 (AR 774-77).  "If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.970(b).  Because all four reports involved office visits that occurred after the May 19, 2006 hearing, the Appeals Council properly declined to consider them.

### IV.  ORDER

Good cause therefor appearing, IT IS HEREBY ORDERED that the Commissioner's motion for summary judgment is GRANTED; and Johnson's motion for summary judgment is DENIED.  The Clerk shall close the file.

DATED: 3/25/2009

JEREMY FOGEL
United States District Judge

8

Case No. 07-05223 JF
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
(JFEX2)

1  This Order has been served upon the following persons:

2  Sarah Lynn Ryan     sarah.ryan@ssa.gov

3  Terry LaPorte     terry@terrylaporte.com, thepospisil@yahoo.com

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

9

Case No. 07-05223 JF
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
(JFEX2)